IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. TREYVON LORENZO CURTIS, Defendant. | No. 3:21-mj-00108-MMS |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, David Chaffin, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that TREYVON LORENZO CURTIS has committed the following federal criminal offense:

> **Possession of Heroin with Intent to Distribute** – On or about February 24, 2021, within the District of Alaska, TREYVON LORENZO CURTIS knowingly possessed a controlled substance, to wit a mixture and substance containing a detectible amount of heroin, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

2. I am employed as an Alaska State Trooper currently assigned as a Task Force Officer [TFO], Immigration and Customs Enforcement [ICE], Homeland Security Investigations [HSI], currently assigned to the Anchorage, Alaska Office of the Resident Agent in Charge. My duties and responsibilities include executing and serving federal warrants, subpoenas, and other official orders; making warrantless arrests, and

investigating violations of federal law. I have been employed as an Alaska State Trooper since 2009, and I have been designated as a Task Force Officer with HSI under 19 U.S.C. § 1401 since August of 2020.

3. I received basic law enforcement training at the Alaska Department of Public Safety Training Academy in 2009, and have since received regular ongoing training in law enforcement and criminal investigation through the Alaska Department of Public Safety and through the Federal Law Enforcement Training Center in Glynco, GA. I have also attended a Homeland Security Investigations basic Task Force Officer Training.

4. I am a law enforcement officer as defined in 18 U.S.C. § 2510(7). As a Task Force Officer I am also a law enforcement officer within the meaning of 19 U.S.C. § 1589(a), and am empowered to serve any warrant issued under the authority of the United States. I am further empowered to conduct investigations, and make arrests for offenses enumerated in 21 U.S.C. § 841 and other federal offenses

5. I am a law enforcement officer as defined in 18 U.S.C. § 2510(7). As a Task Force Officer I am also a law enforcement officer within the meaning of 19 U.S.C. § 1589(a), and am empowered to serve any warrant issued under the authority of the United States. I am further empowered to conduct investigations, and make arrests for offenses enumerated in 21 U.S.C. § 841 and other federal offenses

6. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, my own investigation of this matter, and my training and experience. Since this affidavit is being submitted for the limited purpose of

establishing probable cause to support a complaint and securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.

**FACTS ESTABLISHING PROBABLE CAUSE**

7. On 02/24/2021 a Homeland Security Investigations [HSI] undercover agent [UCA] arranged to purchase of 2 ounces heroin for $3000.00 from an unidentified source of supply in Anchorage, AK. The arrangement was made by text message to a facilitator who later directed the UCA to meet at a restaurant on C Street in Midtown Anchorage, AK to purchase the drugs.

8. At about 1750 hours the UCA met with a black male adult (later identified as Treyvon CURTIS) in the parking lot of the restaurant. CURTIS provided the UCA with 55.8 gross grams of a substance which field-tested positive as heroin in exchange for $3000.00 in pre-recorded serialized U.S. Currency. I was able to take photographs of CURTIS before and after the exchange.

9. Following the exchange, agents surveilled CURTIS as he went inside the restaurant and then left the area as the sole passenger in an Alaska Yellow Cab. Agents followed the cab and watched as it drove to a convenience store on Spenard Road in Anchorage, where Curtis went inside briefly and then returned to the cab. At about 1810 hours the cab dropped Curtis off at the America's Best Value Inn and Suites Extended Stay Motel, located at 4360 Spenard Road, Anchorage, AK. Investigators followed CURTIS as he walked to the third floor of the main building before losing sight of him.

10. I conducted a records check with hotel staff and learned that a person named

"Treyvon Curtis" had been checked in to room 362 on the third floor of the main building since 2/19/2021. The reservation paperwork indicated CURTIS had checked in on 02/19/2021, paid cash for the room, and that he was the sole occupant. The check-in record also included a photocopy of CURTIS's Florida driver's license card. I recognized the photo of Curtis on the driver's license to be the same person who had sold heroin to the UCA.

11. At about 1830 hours, agents saw CURTIS exit room 362 and step into an outside hallway where he stood smoking and talking on his phone. He left the door to room 362 partially ajar. Agents approached Curtis and detained him. Agents then conducted a security sweep of room 362 to clear it of persons in order to seize it pending issuance of a search warrant. At the time of CURTIS's detention, agents conducted a pat search of his person for weapons and felt a hard object in the right side of his pants. CURTIS consented to removing the object and agents discovered it to be a baggie containing about 15 grams of a substance that later field-tested positive as heroin.

12. At about 1916 hours Anchorage Police Detective M. O'Connor applied for and was granted State of Alaska search warrant 3AN-21-00779SW authorizing the search of the hotel room for the presence of controlled substances, currency, ledgers, and electronic devices. The warrant was issued through the State of Alaska Third Judicial District Court in Anchorage and was signed by Magistrate Judge Billingslea.

13. At about 2000 hours, Agents executed the warrant by searching room 362 at the America's Best Value Inn and Suites. In the course of the search, agents located a bulk

quantity of banded US Currency on the single bed in the room, multiple drug sales ledgers, a bulk quantity of plastic baggies, and an aluminum lock-box. Inside the lock-box agents found a baggie containing about 250 grams of a substance that field-tested positive as heroin, a digital weigh-scale with apparent heroin residue on it, and a bulk-quantity of banded US Currency. The $3000.00 in pre-recorded serialized buy-funds used by the UCA were recovered, split between the currency on the bed and the currency in the lock-box.

14. Based on my training and experience, the quantity of heroin recovered during the search is inconsistent with an amount that would be possessed for personal use, and is consistent with possession for further distribution.

## CONCLUSION

15. I have probable cause to believe that CURTIS has committed the offense described in the complaint. Accordingly, I ask the court to issue a warrant for CURTIS's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

RESPECTFULLY SUBMITTED,

David Chaffin
Task Force Officer
Homeland Security Investigations

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on:
Feb 25, 2021

The Hon. Matthew M.
UNITED STATES MAGISTRATE JUDGE